[Civ. No. 16349.   Second Dist., Div. One.   Sept. 10, 1948.]

ISAAH J. CANTRELL, Appellant, v. BOARD OF SUPER-
VISORS OF LOS ANGELES COUNTY, Respondent.

472

Edward F. Perry and John H. Poole for Appellant.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Respondent.

WHITE, J.—Appellant applied to the Superior Court of Los Angeles County for a writ of review to annul an order of the board of supervisors (hereinafter referred to as the board), revoking a permit issued to appellant for the operation of a hog ranch at Meridian Street and Bateman Avenue, in the Duarte district, county of Los Angeles. Following a hearing thereon, judgment was entered in favor of respondent board. From such judgment appellant prosecutes this appeal.

The following are the facts disclosed by the agreed statement on appeal (rule 6 of Rules on Appeal) :

On April 1, 1947, respondent board of supervisors made its order revoking within six months thereafter, the foregoing permit, under authority granted it by Los Angeles County Zoning Ordinance No. 1494 (new series) (as amended) July, 1946.

The order of revocation was made following a recommendation of the Los Angeles County Planning Commission (hereinafter termed the commission) that said permit should be revoked because appellant's hog ranch was detrimental to the general health and welfare of the community. The commission's determination was made after a consideration of the factual data and testimony presented at a public hearing duly held by the zoning board of said commission on March 27, 1947.

When the cause was before the superior court it was stipulated that the transcript of proceedings had before the zoning board was erroneous in the following respect, to wit, in answer to a question propounded to a witness as to whether the hog ranch of appellant, "is more detrimental to the health and safety, and the type of use more so, than any others you have seen?" the transcript records the answer as "Yes," when in fact the answer was "No." The transcript contained this error when it was submitted by the zoning board to the commission and to respondent board in compliance with section 71 of the aforesaid county ordinance. The return to the petition for a writ of review does not show that any findings were made by the zoning board or by the respondent board.

It is first contended by appellant that respondent board was without jurisdiction to act because a true copy of the tes-

timony was not forwarded to it as provided in said section 71 of the aforesaid ordinance which reads as follows:

"The Commission in recommending action by the Board of Supervisors on a permit shall transmit to the Board of Supervisors:

"(a) A transcript of the testimony before the Zoning Board unless the Commission itself heard the case, in which circumstance a transcript of the testimony before the Commission.

"(b) All reports and exhibits introduced in evidence.

"(c) All reports made to the Zoning Board or to the Commission."

The problem presented is whether the foregoing error in the transcript is such a failure of compliance with the ordinance as to deprive respondent board of jurisdiction to act.

There are two reasons why the aforesaid error in the transcript did not divest respondent board of jurisdiction to revoke appellant's hog ranch permit. First, it was immaterial whether other hog ranches were equally detrimental or more so than was appellant's, to health and safety. If the operation of appellant's hog ranch was in fact detrimental to public health or was a nuisance, then revocation of his permit was justifiable regardless of how many other hog ranches might be just as detrimental or more so. The question is not whether the operators of other hog ranches were being favored, but whether appellant's operation of his hog ranch was deleterious to the public health and welfare. Therefore, it cannot reasonably be assumed that respondent board would have come to a different decision had the aforesaid error not been made.

Secondly, since under the ordinance respondent board had jurisdiction to follow the recommendation of the zoning board and commission and revoke appellant's permit, it cannot be presumed that they did read the transcript. There is nothing in the record to indicate that respondent board was influenced in its action by a reading of the transcript rather than because of the recommendation of the zoning board and commission. Under the circumstances here present, we cannot indulge in the supposition that any member of respondent board was misled by the error in the transcript. It has long been the rule as to statewide agencies that when such agencies adopt the facts found and the decision recommended by a referee or one who is authorized to and does hear the evidence, members of the board constituting the state agency and who make the final decision are not required to review the record. Of course, an

entirely different situation would be presented if the state board, disregarding and setting aside the findings and recommendation of the referee, undertook, without a review of the evidence, to appraise the same and make determinations based thereon (*Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 398 [184 P.2d 323], and cases therein cited).

We are persuaded that where, as here, respondent board adopted the recommendation of the zoning board and commission, the former of which was authorized to and did hold a public hearing, respondent board was not required to read the testimony adduced at such hearing, and in the absence of a showing that respondent board's action in revoking appellant's permit was prompted by a reading of the transcript rather than by the recommendation of the zoning board and commission, we cannot assume that appellant was prejudiced by the foregoing error appearing in the transcript.

It is next contended by appellant that there was no substantial evidence that his hog ranch was detrimental to the public health or safety, and that any such finding was therefore, in excess of the board's jurisdiction.

Section 80 of the ordinance provides that the board may revoke a permit previously issued where the board finds that the use to which such permit is put is detrimental to the public health or safety or is a nuisance.

The weight of authority is that the reviewing court has no right on a writ of review to judge of the intrinsic value of evidence, nor to weigh it. The writ cannot be used for the purpose of determining whether or not, in the opinion of the reviewing tribunal, the evidence was sufficient to support the decision complained of, provided the inferior tribunal or board had jurisdiction and the record discloses substantial evidence to support the decision (*Garvin* v. *Chambers,* 195 Cal. 212 [232 P. 696]; *Central Pacific R. R. Co.* v. *Board of Equalization,* 43 Cal. 365; *Winning* v. *Board of Dental Examiners,* 114 Cal.App. 658 [300 P. 866]; *Fuller* v. *Board of Medical Examiners,* 14 Cal.App.2d 734, 742 [59 P.2d 171]). It is our function to determine whether the board was guilty of an abuse of discretion in revoking a permit to conduct a legitimate business without competent and substantial evidence establishing just cause for revocation. There must be a basis in the evidence having rational probative force. For instance, evidence that is predicated upon mere uncorroborated hearsay or rumor cannot be dignified as substantial evidence.

■ At the public hearing held by the zoning board in the matter now engaging our attention, there was evidence that ". . . the feeding floors of both ranches (the hearing concerned two adjacent properties—one owned by appellant and the other by a Mrs. Wright) are so constructed or maintained so as to be rat harbors and there is evidence of rat infestation. There is a large pool of water standing between Mrs. Wright's hog ranch and the Cantrell Ranch along the side of the road. This water drains from the pens and stands stagnant. I have been there and there was considerable water standing. That is the health department's standpoint. We feel that the health problem involved is the fly-breeding and the rat odor which comes under the heading of a nuisance.''

When at the hearing appellant's counsel asked the witness Paul Ballinger of the Los Angeles County Health Department, ''You mentioned the matter of rat infestation. Is that attributed to the hog ranch or the dump?'' the witness answered, ''Both.''

Arthur L. Beatty, Sanitarian for the Los Angeles County Health Department, testified:

''With the company of Mr. Savage, rodent control division, on the 10th of January on orders of the acting director, we made a survey of the entire area. In not only the two hog ranches but the adjacent areas and residential zones as well, we found evidence of rats. There were rats in the dump. It was poorly maintained. There were piles of garbage mixed with trash, tin cans, and swill, offering excellent food material for rat infestation. At Mr. Cantrell's we found evidence of rat burrows active around the small brooder pens and in the wash immediately to the end of it. The feeding slabs were not properly cleaned up. A rat could get under it. An inspection was made and there was a large amount under the feeding block. At the dump, garbage and swill from the feeding slabs is being dumped. You can't see a rat in the area, but they undoubtedly are there. As long as edibles and garbage are dumped without disposal, you are going to have rats.''

When asked whether the hogs consume all the garbage given them, this witness replied:

''No, they do not. I have gone into hog ranches and have seen that the hogs will eat certain things and leave other—bones, etc., but the rats will eat anything.''

Jacob Sanarjian of the Los Angeles County Health Department testified:

"On January 10, Mr. Ballinger and I made the investigation of rodent control, and at the hog farm we found conditions to be very poor. The hog farm cement slabs are poorly constructed. The wastes are dumped into an open field. These places adjoin each other. You might as well say they are one piece of land, spread out all over. The question if the hogs would eat all the garbage would not make any difference because the rats would be there eating the excreta. I would say that as long as they have the excreta piled up there will always be rats."

We are satisfied that the testimony abundantly establishes and supports the conclusion arrived at by the board that the maintenance of appellant's hog ranch constituted a menace to public health and safety. The testimony narrated above was sufficient to support a finding and conclusion that appellant's hog ranch interfered with the use, comfort and enjoyment of property in its immediate vicinity. ■ In a proceeding such as is now before us, it is not necessary to show that the hog ranch in question was so conducted as to cause actual injury to health, but it is sufficient to show that the enterprise was so offensive as to render the enjoyment of life and property uncomfortable (*Commonwealth* v. *Perry,* 139 Mass. 198 [29 N.E. 656] ; *Kimball* v. *Thompson,* 70 F.Supp. 803, 808).

■ We are further impressed that from the evidence adduced herein, the board could take judicial notice of the fact that the presence of large numbers of rats and flies is extremely detrimental to the health of the public. ■ Courts may take judicial knowledge of scientific facts which are commonly recognized (*Coughlin* v. *Great Western Power Co.,* 183 Cal. 548, 551 [191 P. 920] ; *Roy* v. *Smith,* 131 Cal.App. 148, 151 [21 P.2d 151] ). For example, the court has taken judicial notice that the geographic situation of the city and county of San Francisco and its marine traffic were such as to make constant vigilance against bubonic plague (spread by rats) necessary (*Spreckels* v. *City & County of San Francisco,* 76 Cal.App. 267, 274 [244 P. 919] ). ■ And in addition to the courts, certain boards and tribunals, such as respondent board herein, established as they are for determining certain classes of rights, while not strictly courts, do partake of their nature, and they too may take judicial notice of certain matters (*Anderson* v. *Board of Dental Examiners,* 27 Cal.App. 336, 339 [149 P. 1006] ; *Benton* v. *Industrial Acc. Com.,* 74 Cal. App. 411, 415 [240 P. 1021] ; *Rich* v. *McClure,* 78 Cal.App.

478

209, 213 [248 P. 275]; *Mann* v. *Board of Medical Examiners,* 31 Cal.2d 30, 37 [187 P.2d 1]).

■ Appellant next claims that the board erred in failing to make a finding as to whether the use complained of was (1) a nuisance, or (2) detrimental to the public health and safety as required by section 80 of the ordinance. In view of the fact that, as appellant concedes, ''the board apparently adopted a finding by the commission that the said ranch was detrimental to the public health and welfare''; that the evidence supports such a conclusion on the part of the commission, and adopted by the board, it becomes unnecessary to discuss the claimed failure of the board to make a finding as to whether the hog ranch constituted a nuisance. Revocation of the permit was authorized if the maintenance of the hog ranch was either detrimental to the public health or safety or was a nuisance.

■ Finally, appellant insists that the failure of the zoning board to report its findings as required by section 70 of said ordinance was a failure to follow procedural due process.

Section 70 provides:

''After a hearing the Zoning Board shall report to the Commission and the Commission shall report to the Board of Supervisors their respective findings as to whether the erection, construction, alteration, enlarging, moving, occupying or using of such building, structure, improvement or premises for the business, occupation or purpose designated in the manner set forth in the application or under restrictions or conditions will be a menace to or endanger the public health, safety or general welfare.

''The Zoning Board shall also recommend to the Commission and the Commission shall recommend to the Board of Supervisors the granting of such permit as applied for or under such restrictions or conditions as they find necessary to prevent such proposed use from becoming a menace to or endangering the public health, safety or general welfare, or shall recommend a denial thereof.''

While the foregoing section has reference to the duties of the zoning board and commission following hearing upon an application for the issuance of a permit, section 84 of the ordinance provides that following a hearing upon the revocation of a permit the zoning board and the commission shall make the same reports and recommendations, accompanied by the

same material, and in the same manner, as in the case of an application for a permit.

It is appellant's contention that two things are required of the zoning board, viz., (1) that it shall transmit findings, and (2) that it shall transmit recommendations. That only the latter was done.

"After consideration of all the factual data and testimony presented at the hearing, the commission determined that the operation of the hog ranch and dump were detrimental to the health and general welfare of the community." This was followed by the recommendation to respondent board that appellant's permit be revoked.

The foregoing language must be held to imply that the commission had found that detriment and injury to the health and general welfare of the community ensued from the operation of the hog ranch in question. And in connection with the action of such commission and board, composed usually of laymen, the fact that a certain action is taken or recommendation made raises the presumption that the existence of the necessary facts had been ascertained and found. (*Bartholomae Oil Corp.* v. *Seager*, 35 Cal.App.2d 77, 80 [94 P.2d 614]; *Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, 323 [144 P. 2d 4]; *North Side etc. Assn.* v. *County of Los Angeles*, 70 Cal. App.2d 598, 608, 609 [161 P.2d 613].) We cannot perceive wherein appellant has been prejudiced by the absence of formal findings under the facts here present.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 8, 1948. Carter, J., and Schauer, J., voted for a hearing.