Before STATE INDUSTRIAL BOARD, Respondent.

Mrs. JOSEPH EMMICK, Claimant, Respondent, *v.* THE HANRAHAN BRICK AND ICE COMPANY and Another, Appellants.

Third Department, November 15, 1923.

**Workmen's compensation — claimant's intestate was killed by lightning — intestate was standing near end of twisted wire cable which was fastened to rafters in peak of building and to bedplate on side — intestate was subject to special hazards due to conditions under which he was required to work — injury arose out of employment.**

The death of plaintiff's intestate was the result of an accidental injury arising out of his employment, since it appears that at the time of his death he was working in a shed and was standing near the end of a twisted wire cable which was fastened to the rafters in the peak of the shed and passed therefrom down the side of the shed to bedplates; that lightning struck the peak of the shed and the charge passed down the cable and entered the intestate's body killing him.

Claimant's intestate was subjected to a special or increased hazard due to the fact that he was compelled by his employment to work in proximity to the twisted wire cable through which the electricity passed.

APPEAL by the defendants, The Hanrahan Brick and Ice Company and another, from an award of the State Industrial Board, made on the 1st day of August, 1922.

*William Butler* [*Charles Stockdell Gray* of counsel], for the appellants.

*Carl Sherman,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], for the respondents.

VAN KIRK, J.:

The deceased, Henry Emmick, was a carpenter. While engaged in his regular occupation in a shed at a brick-kiln, assisting his boss, Mr. Mottes, in taking measurements of parts of the shed, he was killed by lightning. There was a twisted wire cable which was looped around the rafters at the peak of the shed and passed therefrom down on either side to the large timbers or bedplates which supported the opposite sides of the shed. The deceased was standing on bricks within two or three feet of one of the cable ends; while Mr. Mottes was standing within a similar distance from the other cable end and on the opposite side of the shed. A third man was standing about midway between these two and a few feet from

either. The deceased was killed by the electric current; Mr. Mottes was knocked down and was unconscious for a considerable time; the man who stood between the two was not injured. The cable, where it was wound around the peak timbers, was cut into and the rafters were splintered at this point.

But one question is raised upon this appeal — whether or not the accidental injury arose out of the employment; that is, was the deceased subjected to a special or increased hazard due to the circumstances under which he was required to work? (*Campbell* v. *Clausen-Flanagan Brewery*, 183 App. Div. 499.) This is a question of fact. The State Industrial Board has found: " The deceased was subjected to a special and increased hazard due to the fact that he was compelled, by his employment, to work in proximity to an iron rod, which was across the top of the kiln near the roof of the building in which the deceased worked." (The use of the words " iron rod " is evidently a mistake for " iron cable.") It is a natural inference that the electric current passed from the peak of the building through this cable and through the bodies of the deceased and Mr. Mottes; and the evidence justified the finding above quoted. Knowledge concerning atmospheric electricity is by no means complete, but something is known concerning it and the court is justified in verifying its information or refreshing its recollection from recognized authorities. (*Chiulla De Luca* v. *Board of Park Comrs. of City of Hartford*, 94 Conn. 7; 107 Atl. Rep. 611.) Electrical energy exists in ions in the atmosphere and in drops of vapor in the clouds. This energy is positive or negative, and those energies of opposite signs attract. Generally, or at least often, the electrical energy in the clouds is of the opposite sign to that in the earth. When a cloud containing electrical energy passes sufficiently near, over a hill or a live tree or other object projecting above the earth, the current passes between the cloud and the object on the earth and the lightning flash occurs. It is known that atmospheric electrical energy acts similarly to electrical energy in a laboratory. It naturally passes through the best conductor. It will pass a greater distance between two copper points than between two iron points. Likewise wet or green timbers are better conductors than dry timbers. A twisted wire cable, or the human body, is a better conductor than a dry timber or board. (See Ency. Brit. [11th ed.] under subjects " Lightning " and " Atmospheric Electricity.") In *Andrew* v. *Failsworth Industrial Society, Ltd.* (6 W. C. C. 11) it appeared that the workman was on a scaffold twenty-three feet from the ground. An award for compensation was sustained for the reason that he, on account of his position on this scaffold, was exposed to a greater

risk than the average man in the vicinity. In *State ex rel. People's Coal & Ice Co.* v. *District Court of Ramsey County* (129 Minn. 502; 153 N. W. Rep. 119) it was held that an employee, who went under a large tree for protection from a storm, and was there killed by lightning, was subjected to a special hazard. And a similar holding is found in *Chiulla De Luca* v. *Board of Park Comrs. of City of Hartford* (*supra*) where an employee, raking leaves in Colt Park, sought refuge from a storm under a near-by tree and was there struck by lightning.

The award should be affirmed, with costs.

COCHRANE, P. J., H. T. KELLOGG, HASBROUCK and McCANN, JJ., concur.

Award unanimously affirmed, with costs in favor of the State Industrial Board.