[S. F. No. 12754. In Bank.—December 30, 1927.]

LONDON GUARANTEE AND ACCIDENT COMPANY, LIMITED (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JOHN MURRAY, Respondents.

Haas & Dunnigan, H. E. Forster and H. C. Johnston for Petitioner.

G. C. Faulkner for Respondents.

PRESTON, J.—By this proceeding petitioner seeks to have annulled an order, made by respondent Industrial Accident Commission, awarding compensation in the sum of nine hundred dollars to one John Murray, as a partial dependent, on account of death of his son, Ralph, through injury received in the ordinary course of employment. Upon petition for writ of review the district court of appeal for the second district annulled the award and the cause is now before us for hearing. Petitioner appears as the insurer of the employer of said deceased, Ralph Murray.

The sole question to be determined is whether the evidence adduced before respondent Commission sufficiently supports its findings and establishes, first, that the father was at least partially dependent upon his said son for support, and, second, that part of the earnings of said son were

actually turned over to the father and used by him for his said support and maintenance.

It will suffice to state without setting forth the evidence at length that it substantially imports the following facts: The aged father, a man of seventy-six years at the time of death of the son, was injured during 1920 or 1921 in an automobile accident. As a result he became totally incapacitated for work and suffered a mental breakdown, his mental state growing worse with passing years. He had theretofore been alienated from his wife and family and had for some twenty years led a solitary life, existing as a miser in rough shacks along the bank of the Mississippi River and occupying himself with picking up old rags, bottles, etc. He suffered the continued mental delusion that he was absolutely penniless and without means of livelihood or support. Continuously throughout the years of the father's incapacity said deceased son had sent him each month the sum of twenty-five dollars. Although there were six other children apparently none of them had ever contributed to the support of their father and it is questionable whether their circumstances were such as would have enabled them to do so. Shortly after the death of Ralph, another son, Walter, secured the commitment of the father to an insane asylum.

Such action gave rise to a peculiar situation upon the hearing of this case before the Commission in that it made it difficult, if not almost impossible, to secure the testimony desired for a proper determination of the matter. The testimony of the father could not be had or, if secured, it would have been valueless on account of his mental condition and especial delusion as to money matters. Furthermore, owing to his queer lonely life but few of the true facts or circumstances were known to outside persons. Hence, by far the greater portion of the proof, and especially that relating to contributions made by deceased to the father, consisted of hearsay evidence.

Hearsay evidence, however, is admissible in a proceeding before the Commission and may be sufficient to establish any fact at issue. (See *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 195 Cal. 174, 180 [231 Pac. 996], and cases therein cited.) As is there said: "The cases construing the act since the adoption of the amendment of 1917 (Stats. 1917, p. 831) leave no room for doubt as to the probative

sufficiency of hearsay evidence if in the judgment of the Commission such evidence carries with it convincing force. It is, in this class of cases, legal evidence and may be sufficient in itself to sustain an award.''

■ Although here the evidence may appear to be somewhat indefinite in certain respects and lacking in requisite strength, yet in view of the circumstances of the case as above related, it was, if believed by respondent Commission, legally sufficient to support their conclusion in the premises, to wit, that the son contributed twenty-five dollars per month to the use of his father, which sum was actually used by said father for his maintenance and support. To put it another way, the question as to dependency is one of fact upon which the findings of the Commission, having sufficient support in the evidence, are conclusive. ''It is to be borne constantly in mind that questions as to who are dependents and the extent of dependency are to be determined primarily by the Commission, and, in accordance with general rules governing the review of findings, its conclusions in this regard will not be disturbed when supported by evidence in the record.'' (27 Cal. Jur., p. 289, sec. 25.)

■ The record further shows that at the time the father received news of the death of his son Ralph he was visiting another son, Walter, at Fort Dodge, Iowa. During the visit, said Walter discovered some figures in a note-book belonging to the father, who, upon being questioned, admitted that at some previous date he had loaned to his own brother (Walter's uncle) five thousand dollars or more, in return for which the brother made out certain promissory notes. However, instead of delivering them to the lender as evidence of the debt, he kept both notes and money. He never paid interest on the money nor did he make known the existence of the transaction during passing years. Said Walter thereupon went to the brother and succeeded in securing his father's property, reduced to cash in amount of five thousand five hundred dollars. He was thereafter appointed guardian for his father and as such guardian retained said sum for the purpose of meeting expenses at the insane asylum.

In the face of the fact that at the time of the injury the father was utterly without knowledge of his right to said money, it is contended that because it really belonged to

him he was not dependent upon his son Ralph, as interest from said estate would have supported him in his accustomed manner of living, or he could have been using the principal, in which event his dependency would only have started upon exhaustion of said fund. The mere statement of such a contention reveals its fallacy. In the first place the father did not actually have possession of the estate, nor was it of any monetary value to him. So far as he was concerned, at most it consisted of the unevidenced claim, if he should happen to remember its existence, of an insane man against his brother and the verbal promise of said brother to pay, which promise might or might not be fulfilled. The brother never recognized the debt or evidenced the slightest intention of paying it. As it had passed from the memory of the father, he was in no position to look to it for support. But for the chance discovery of the figures in the note-book the true facts might never have come to light. Certainly such a situation cannot be held to have relieved dependency upon the son.

The true test of dependency is stated as follows in volume 1916A, L. R. A., page 248: "Dependency . . . does not mean absolute dependency for the necessities of life; it is sufficient that contributions of the workman are looked to for support in the maintenance of the dependent's accustomed mode of living.

"The mere fact that the claimant has some property of his own does not necessarily prevent him from being dependent upon the earnings of the deceased workman." (Citing *Re Carter* [1915], 221 Mass. 105 [108 N. E. 911].) See, also, 28 R. C. L., sec. 66, p. 771, where the rule is similarly stated, and 27 Cal. Jur., sec. 25, p. 289.

The subsequent obtainment of the estate cannot affect the award made as questions of dependency are determined in accordance with the facts as they may appear at the time of injury to the employee (27 Cal. Jur., sec. 26, p. 291, and many cases there cited).

Award affirmed.

Richards, J., Shenk, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

CURTIS, J., Dissenting.—I dissent. The undisputed evidence shows that John Murray, the respondent and the father of the deceased, was, at the time of the death of his son, possessed of property of the value of approximately five thousand five hundred dollars. This property consisted of money loaned out to the brother of the father, and was represented in the form of notes receivable, and there is not a scintilla of evidence to show that these notes were not worth their face value. In fact, as recited in the majority opinion, they were in a short time after the death of the son "reduced to cash in an amount of five thousand five hundred dollars." The finding, therefore, of the Commission that the father was partially dependent upon his son during the lifetime of the latter finds no support whatever in the evidence.

Rehearing denied.

All the Justices concurred.