## NATIONAL LABOR RELATIONS BOARD v. SERVICE WOOD HEEL CO., Inc.

### No. 3707.

Circuit Court of Appeals, First Circuit.

Dec. 19, 1941.

Louis Libbin, of Washington, D. C. (Robert B. Watts, Laurence A. Knapp, Ernest A. Gross, and Harry G. Carlson, all of Washington, D. C., on the brief), for N. L. R. B.

Walter M. Espovich, of Haverhill, Mass. (Dean E. Nicholson, of Haverhill, Mass., on the brief), for Service Wood Heel Co.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This is a petition by the National Labor Relations Board for enforcement of an order against Service Wood Heel Company, Inc.,[1] dated May 21, 1941. 49 Stat. 454, 29 U.S.C.A. § 160(e). The order, which is in the usual form, was based upon findings by the Board that the respondent had engaged in unfair labor practices by dominating and interfering with the administration of Russell Employees' Association at the respondent's Plaistow plant, and by refusing to bargain collectively with the Wood Heel Turners' Local 12-A, United Shoe Workers of America (C.I.O), as the exclusive representative of its production employees at its Malden plant.

Before us, the respondent challenges only that part of the order (paragraphs 1(b) and 2(b)) requiring it to bargain with the aforesaid union as the exclusive representative of its production employees at the Malden plant. Respondent does not put in issue the appropriateness of the unit fixed by the Board. It does not deny that there was substantial evidence of its refusal to bargain. Nor does it claim that this refusal was based upon failure of the union to furnish it with satisfactory proof that the union had been designated as bargaining agent by a majority of the employees in the unit. See National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 1940, 111 F.2d 681, 688. The sole point pressed by the company is that the Board's finding that a majority of the employees in the unit had designated the union as their representative is unsupported by substantial evidence.

---

[1] Respondent carried on business under the name of The Russell Heel Co.

At the hearing, counsel for the Board put in evidence a list, prepared by respondent, of all the employees at the Malden plant and their respective occupations, from which list it appeared that there were on March 1, 1940, 60 production employees in the unit. This list was verified by the testimony of respondent's bookkeeper who made up the list from the payroll book. To prove that a majority of these 60 employees had designated the union as their representative, the Board produced as a witness Fred G. Hutchins, one of said employees.

Hutchins testified that some of his fellow workers asked him to organize them and get them into the United Shoe Workers of America. In his own handwriting he prepared little slips of paper to be distributed among the men for signature, reading as follows:

"Date

"I, being an employee of the Russell Heel Company's Malden plant, petition the National Labor Relations Board to certify the United Shoe Workers of America of the C.I.O. as the bargaining agent for me, with my employer.

· "Name———

"Opperation Address———"

He distributed these slips throughout the factory some time during the last week in February, 1940. Hutchins personally obtained the signatures of 12 or 14 employees in the plant. Arsenault and Guattieri, two fellow workers, assisted him in the distribution. The slips were "passed to individual members of the crew, and they were told that if they wanted to join the C.I.O., or have the C.I.O. represent them, to sign the slips and turn them in." The signed slips were all returned to Hutchins by the end of the last week in ·February. The batch of slips, after being identified by Hutchins, were introduced in evidence by the Board. A comparison of the names on the slips with the list of the production employees taken from the payroll reveals that 33 out of 60 employees in the unit had designated the union to represent them.

The respondent's point is that Hutchins of his own personal knowledge could testify only to the genuineness of the 12 or 14 signatures which he himself obtained; that the signed slips which were returned to him by Arsenault and Guattieri constituted only hearsay evidence.

■ But hearsay evidence is not incompetent in proceedings before the Board, 49 Stat. 454; the Board may consider such evidence and give it its rational probative value. It is true, "Mere uncorroborated hearsay or rumor does not constitute substantial evidence." Consolidated Edison Co. v. National Labor Relations Board, 1938, 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126. Such might have been the situation if the Board had introduced the slips without any explanation of where they had come from or how they had been obtained. The ultimate question of fact is whether the Board had before it such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached. If in addition to deciding this question of fact, the Board before making its findings must sift out the various items of evidence before it and reserve for special treatment those items which would have been inadmissible in a court of law under the technical and often debatable rules of evidence, we think there would be put upon the Board the very burden of which the Congress intended to relieve it by the provision of § 10(b) of the Act, 49 Stat. 454, 29 U.S.C.A. § 160(b) that "the rules of evidence prevailing in courts of law or equity shall not be controlling." Cf. American Furniture Co. v. Graves, 1925, 141 Va. 1, 15, 16, 126 S.E. 213, 216, 217; London Guarantee & Accident Co., Ltd., v. Industrial Accident Commission, 1927, 203 ·Cal. 12, 263 P. 196.

■ Here we have a small group of employees in a plant where everybody· knows everybody else. Hutchins personally verified over one-third of the signatures. There is no reason to suppose that Arsenault and Guattieri forged the signatures of fellow works on the other slips. We have examined all the signatures and find no inherent indications of forgery. The signatures of Hutchins, Arsenault and Guattieri appear on the slips which they respectively signed for themselves, and any crude attempt at forgery of the other signatures would probably be apparent from a comparison of them with the signatures of these three employees who distributed and collected the slips. Further, it is quite unlikely that any such forgery would be attempted, in the circumstances, for this is hardly an effective way of getting one's fellow workers to join and support a union. We think there was sufficient corroboration in the testimony of Hutchins, in a careful inspection of the slips themselves, and in the surrounding circumstances, to render

the evidence in its hearsay aspects trustworthy and to satisfy a reasonable trier of the facts that a majority of the employees in the unit had designated the union as their representative.

In National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 1938, 94 F.2d 862, 873, certiorari denied 1938, 304 U. S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540, referring to the provision of § 10 (b) of the Act, to the effect that "the rules of evidence prevailing in courts of law or equity shall not be controlling," 49 Stat. 454, the court said:

" * * * no doubt, that does not mean that mere rumor will serve to 'support' a finding, but hearsay may do so, at least if more is not conveniently available, *and if in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs.*" (Italics added.)

In International Association of Machinists, etc., v. National Labor Relations Board, 1939, 71 App.D.C. 175, 110 F.2d 29, 35, affirmed, 1940, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50, the court said:

"In the decision of questions of fact, the Board's findings are made conclusive, if supported by evidence, which must be substantial. But it is only convincing, not lawyers' evidence which is required. The Board is not limited to rules of evidence prevailing in courts of law or equity. The evidence must be such as a reasonable mind might accept, though other like minds might not do so. The statutory mandate dispensing with judicial technicalities in procedure binds the reviewing court to the same extent as it does the Board. The review is of administrative action taken by direction of Congress according to administrative, not judicial, procedure. The reviewing court cannot reweigh the evidence in scales which a trial court would use in deciding whether to admit it. We are required to sustain the Board's findings, if reasonable minds, unhampered by preconceptions derived from the technical law of evidence, might differ as to conclusions to be drawn from the evidence presented. Nor can we exclude from consideration on review evidence which the Board was entitled to take into account."

We think the evidence in the present record meets the tests laid down in the foregoing cases. See also National Labor Relations Board v. Piqua Munising Wood Products Co., 6 Cir., 1940, 109 F.2d 552, 554;

Hartsell Mills Co. v. National Labor Relations Board, 4 Cir., 1940, 111 F.2d 291, 292; National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 1940, 116 F.2d 753, 755, 756; National Labor Relations Board v. Moltrup Steel Products Co., 3 Cir., 1941, 121 F.2d 612, 617. Cf. Martel Mills Corp. v. National Labor Relations Board, 4 Cir., 1940, 114 F.2d 624, 629.

A somewhat similar question was before us in National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, at page 687, where we said:

"The Board was warranted in finding that on and after March 18, 1937, United was the duly designated representative of the production employees in the two Skowhegan plants. A list of 485 workers who had signed application cards for membership in United was introduced into evidence, verified under oath by a witness as having been transcribed from the names on the cards. The original application cards were produced at the hearing and respondent was afforded an opportunity to check the cards with the list. Respondent now urges that the burden of proof is upon the Board to establish that the signatures on the application cards were the genuine signatures of the employees. But in view of the testimony of witnesses as to what took place at the various mass meetings of respondent's employees, above mentioned, and their testimony that the signatures were obtained in the plant and at these mass meetings, we think enough has been shown to put the burden on respondent of going forward with evidence tending to challenge the authenticity of the signatures, which could readily have been checked against the signatures of the employees on respondent's payroll, had there been any real question as to their genuineness."

This of course did not mean that when an employer is charged with the unfair labor practice of refusing to bargain with the representative of his employees the employer has the burden of showing that the union was not the choice of a majority of the employees. All we meant to say was that on all the evidence presented at the hearing in that case, including the hearsay evidence, enough had been shown to warrant a reasonable inference that the union was the duly designated representative of the employees; and that if the company had wished to avoid the drawing of such an inference by the Board, or to upset on review a finding to that effect, it should have

brought forth evidence tending to challenge the authenticity of the signatures on the application cards. Had the company produced such evidence the Board, before finding the employer guilty of a refusal to bargain in violation of § 8(5) of the Act, 29 U.S.C.A. § 158(5) would have had to satisfy itself, on the preponderance of all the evidence, that the union had been designated by a majority of the employees in the unit.

 While we think the evidence in the record would have been sufficient to sustain the Board's findings and order, there is, however, a technical difficulty which requires us to remand the case to the Board for further proceedings, so far as concerns those portions of the order requiring respondent to bargain collectively with the union. When the slips above mentioned were offered in evidence counsel for the respondent objected to their admission. The trial examiner overruled the objection, saying: "I am overruling it, at least to the extent that they may be received, conditioned, as I said, as slips which came into this man's possession as he described." From this, counsel would naturally assume that the slips were not at that point being unconditionally received as evidence that the men whose names appeared thereon had in fact designated the union, but were being admitted de bene, subject to being connected up by other evidence, perhaps by testimony from Arsenault and Guattieri, both of whom presumably were available. No such other evidence followed; and as matters stood at the close of the Board's case the respondent might well have assumed that there was no evidence before the examiner to prove the union's majority representation, and hence may have deemed it unnecessary to offer any evidence on the issue. The respondent should be afforded an opportunity to challenge the authenticity of any of the signatures on the slips, if it can produce any evidence along that line.

We shall presently decree enforcement of the other paragraphs of the Board's order, but before entering a final decree as to paragraphs 1(b) and 2(b) of the order, either affirming, modifying, or setting them aside, we think this portion of the case should be remanded to the Board for further proceedings, at which counsel both for the Board and for respondent may be permitted to offer evidence on the issue whether the union represented a majority of the employees on the crucial dates. If the Board

holds such additional proceedings, and issues findings and an order thereon, such additional proceedings, findings and order shall be made a supplemental part of the pending record for our final action and decree. This was the procedure we followed in National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 690.

A decree will be entered enforcing the order of the Board except as to paragraphs 1(b) and 2 (b), with the necessary modification in paragraph 2(c) in regard to the posting of notices. As to paragraphs 1(b) and 2(b) the case is remanded to the Board for further proceedings not inconsistent with this opinion.

WOODBURY, Circuit Judge, concurs in the result.

