[Civ. No. 15461. Second Dist., Div. Three. Dec. 30, 1946.]

TRUCK INSURANCE EXCHANGE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, ETHEL JANETA GILSTRAP et al., Respondents.

Syril S. Tipton for Petitioner.

R. C. McKellips and John A. Rowe, Jr., for Respondents.

SHINN, J.—Petitioner herein, workmen's compensation insurance carrier for one Max W. Beebe, seeks in this proceeding annulment of an award of a death benefit and other sums to the surviving wife and the mother of William Fleet Gilstrap, who was killed by a bolt of lightning while employed by Beebe as a carpenter's helper.

The evidence as to the circumstances of the accident was meager, consisting of the testimony of Beebe, whose account of the accident was based upon hearsay. The parties to the proceeding evidently understood that the accident happened as related by Mr. Beebe; no evidence was offered to supplement or contradict it. Decedent was working as a carpenter's helper on the roof of a single-story frame and stucco building which Beebe was constructing, and had been engaged in carrying composition shingles to the roof where the carpenters were laying them. While he was on the roof of the building, in the vicinity of a cast iron vent pipe, he was struck by a bolt of lightning, which caused his death. There was no evidence of damage to the building. The accident happened about 10 a. m.; it had been raining that morning but the rain had subsided. None of the other workmen were on the roof or saw the lightning strike Gilstrap, but they were somewhat deafened by the

shock and, upon inquiring whether anyone had been injured, noticed that Gilstrap was missing and they found his body lying upon sandy ground, where he had fallen from the roof. Burns upon his head were the only visible marks of injury, and the immediate cause of his death was found to be electrocution. The findings upon which the awards were based are challenged upon the ground that the injury which caused death was not one ''arising out of'' the employment. (Lab. Code, § 3600.) The existence of other conditions upon which the right to compensation depended is conceded.

The legal principles involved are familiar. The requirement of our Labor Code that an injury, to be compensable, must arise out of the employment is found in the workmen's compensation laws of all the jurisdictions to which we shall refer. The courts have accepted in principle the succinct statement in *In re Employers' Liability Assurance Corp.* (*In re McNicol*), 215 Mass. 497 [102 N.E. 697, L.R.A. 1916 A 306], that, ''It [the injury] arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'' In determining whether an injury through action of the elements arose out of the employment, the commission or other fact-finding body is required to make a finding as to whether the risk from which the injury arose was one which was common to the entire community or one which by reason of the nature of the employment was greater than the risk to which the public in general was exposed. Where the hazard is uncommonly great, the risk arises out of the employment and the injury is compensable. The legal principles which determine liability are the same whether the injury results from an act of God or a human agency. In either case it is a question of fact whether there was a causal connection between the nature of the employment and the injury.

The courts of all jurisdictions recognize the principle stated in 71 C.J. 758, that ''Harm resulting from lightning may be compensable as an injury arising out of and in the course of the employment, where the injured employee is by reason of his employment peculiarly exposed to risk of injury from this source.'' The sole question before us is whether the implied finding of the commission that Mr. Gilstrap was peculiarly or uncommonly exposed to injury by lightning finds sup-

port in the evidence as to the circumstances of the injury and the reasonable inferences therefrom. If it has substantial support in the evidence it is conclusive as a finding of fact and is binding upon the court. (Lab. Code, § 5953.) No expert testimony was introduced as to whether one in Gilstrap's position would be exposed to unusual danger from lightning. The decision of the commission was based upon an assumed knowledge of the laws of nature as applied to actions of lightning in the circumstances. We are of the opinion that the following material facts which it was necessary for the commission to take into consideration are of common knowledge: that with respect to wooden objects, a wet one is a better conductor of electricity than a dry one, and a person standing upon a wet surface is more susceptible to electirc shock than one who stands upon a dry surface; that as between a short gap and a long one in its path, an electric force is more likely to jump the short one, and hence, where atmospheric conditions are such that an electric force is about to be discharged toward the earth, an object which projects above the surrounding surface and is closest to the point of discharge and which is a ready conductor of electrical energy will be the one most likely to receive it; also, that cast iron is a conductor of electricity.

If the conclusion of the commission is one as to which reasonable minds might differ, it would be our duty to abide by it, even if we believed that a contrary conclusion would be equally reasonable. A review of the authorities leaves no doubt that the question is one as to which reasonable minds have differed, and may continue to differ. Many courts have sustained awards of compensation for injuries or death occasioned by lightning, or have annulled awards denying compensation where the question was the same, namely, whether the nature of the employment was such as to subject the employee to an unusual risk of injury. In the cases to which we shall refer, the conclusions were based upon testimony, or upon supposed common knowledge, that lightning is less likely to strike the flat surface of the ground than it is to strike at high points or to strike objects such as buildings or trees which extend a substantial distance above the surrounding surface, if they are free conductors of electric energy. In at least an equal number of cases and under comparable circumstances compensation has been denied. While in both groups of cases the courts have usually followed the findings of the board or com-

mission, in a number of them contrary conclusions have been reached, and have been based upon the ground that the findings of the commission or board were not in accord with the evidence or with facts which were of common knowledge.

The position of the injured person beneath a tree during a storm was held to entail unusual danger from lightning in the following cases: *Chiulla De Luca* v. *Board of Park Com'rs.*, 94 Conn. 7 [107 A. 611]; *Lebourgeois* v. *Lyon Lumber Co.* (1927), 6 La.App. 216; *Fontenot* v. *Lyon Lumber Co.* (1927), 6 La.App. 162; *Gasca* v. *Texas Pipe Line Co.* (1925), 2 La. App. 483; *State* v. *Ramsey County District Ct.*, 129 Minn. 502 [153 N.W. 119, L.R.A. 1916 A 344]; *Madura* v. *Bronx Parkway Commission*, 238 N.Y. 214 [144 N.E. 505]. The same conclusion was reached where the employee had taken refuge in a building, in *Consolidated Pipe Line Co.* v. *Mahon*, 152 Okla. 72 [3 P.2d 844]; *Nebraska Seed Co.* v. *Industrial Commission*, 206 Wis. 199 [239 N.W. 432]; *Bauer's Case*, 314 Mass. 4 [49 N.E.2d 118]; and *Buhrkuhl* v. *F. T. O'Dell Const. Co.*, 232 Mo.App. 967 [95 S.W.2d 843]. In the following cases structures or other objects in close proximity to the injured person at the time he was struck were held to have accentuated the danger from lightning: *Aetna Life Ins. Co.* v. *Industrial Commission of Colorado*, 81 Colo. 233 [254 P. 995] (a wire fence); *Moody* v. *Tillman*, 45 Ga.App. 84 [163 S.E. 521] (a turpentine still); *Mathis* v. *Ash Grove Lime & Portland Cement Co.*, 127 Kan. 93 [272 P. 183] (a railroad track); *Dunnigan* v. *Clinton Falls Nursery Co.*, 155 Minn. 286 [193 N.W. 466]; *Van Kirk* v. *Hume-Sinclair Coal Mining Co.*, 226 Mo.App. 1137 [49 S.W.2d 631] (electrically operated steam shovel and transmission wire); *United States Fidelity & Guaranty Co.* v. *Rochester* (Tex.Civ.App.), 281 S.W. 306 [affirmed 115 Tex. 404 [283 S.W. 135]] (steel shovel and pipeline); *Andrew* v. *Failsworth Industrial Soc.* (1904), 2 K.B. 32, 6 W.C.C. 11 (upon high scaffolding); *Stout* v. *Elkhorn Coal Co.*, 289 Ky. 736 [160 S.W.2d 31] (while working in a coal mine near an earth crack which extended downward from an oak tree which was struck by lightning); *Giovine* v. *United Hebrew Cemetery*, 263 App.Div. 772 [30 N.Y.S.2d 929] (while digging a grave); *Industrial Commission* v. *Laraway*, 46 Ohio App. 168 [188 N.E. 297] (steel bristle broom); *Hassell Iron Works Co.* v. *Industrial Commission*, 70 Colo. 386 [201 P. 894 (a steel bridge); and *Emmick* v. *Hanrahan Brick & Ice Co.*, 206 App.Div. 580 [201 N.Y.S. 637] (wire cable).

The case of *Andrew* v. *Failsworth Industrial Soc., supra,* (1904) 2 K.B. 32, 6 W.C.C. 11, is closely in point and has been cited extensively. The deceased was struck by lightning while laying brick upon a scaffolding at a height of about 23 feet from the ground. His position was held to have involved more than normal risk, because of the height of the scaffolding and, presumably, its wet condition. The finding that the injury arose out of the employment was sustained on appeal. If the facts of all the reported cases furnish a dependable criterion, it would appear that persons who are in the proximity of tall objects which are conductors of electricity are more likely to be struck, and more commonly are struck by lightning than others not so situated. The courts have frequently taken judicial notice of the natural tendency of such objects to increase the risk. (*Chiulla De Luca* v. *Board of Park Com'rs., supra,* 107 A. 611, 612; *Bauer's Case, supra,* 49 N.E.2d 118; *Buhrkuhl* v. *F. T. O'Dell Const. Co., supra,* 95 S.W.2d 843, 846; *Consolidated Pipe Line Co.* v. *Mahon, supra,* 3 P.2d 844; *Emmick* v. *Hanrahan Brick & Ice Co., supra,* 201 N.Y.S. 637, 638. See, also, Horovitz, Workmen's Compensation, p. 106.) It seems to us that in the cases which we have cited the courts reached a more satisfactory conclusion than those of the fact-finding bodies and courts which have taken the view that lightning is as likely to strike in one place as another.

In our case the commission was of the view that the controlling facts above mentioned are of common knowledge. Petitioner insists that we should hold that they are not of common knowledge and argues that if we should so hold, the finding of the commission would be without support in the evidence. But, as already indicated, our views as to the well known natural tendency of lightning to be attracted to the kinds of objects which are more frequently struck are the same as those of the commission. The implied finding that there is increased danger from lightning to one who is standing upon the wet roof of a building during a storm is in accordance with common knowledge and requires no supporting expert testimony. Since this conclusion of fact is controlling, it would serve no useful purpose to review the cases relied upon by petitioner, in which it was held that the risk of injury by lightning is common to all persons who venture out in a storm.

It was the duty of the commission to decide as a question of fact whether Mr. Gilstrap's exposed position on the roof

involved an uncommon risk, that is to say, one that was substantially greater than the risks of all others who were in the same vicinity. The fact that other outdoor workmen might also have been struck by lightning would not necessarily require the conclusion that all persons in the neighborhood were equally exposed. Those who were required to carry on their work in exposed positions may all have been in greater danger than others in the vicinity who were sheltered from the storm.

We have not discussed cases which involved injuries through other acts of God, such as tornadoes, floods, heat, cold, etc., for the reason that injuries from lightning are generally distinguishable upon their facts. A person who is injured by a bolt of lightning which strikes at a single point is usually occupying a position among surroundings which differentiate it from the positions of others in the vicinity, and this is not generally true in cases of injuries from heat, cold, floods, cyclones, and the like, where all those who were exposed may have been equally subjected to danger.

The award is affirmed.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied January 27, 1947, and petitioner's application for a hearing by the Supreme Court was denied February 27, 1947.