[Civ. No. 7507.   Third Dist.   Sept. 7, 1948.]

INDUSTRIAL INDEMNITY EXCHANGE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION AND MARY G. ALATORRE et al., Respondents.

Leonard, Hanna & Brophy and Gladstein, Andersen, Resner & Sawyer for Petitioner.

T. Groezinger and John A. Rowe, Jr., for Respondents.

PEEK, J.—On the ground that the findings of fact have no foundation in the record, but are based purely on speculation and surmise, the petitioner herein seeks a review of the award of death benefits by the respondent commission to the surviving wife and children of Ralph Alatorre, deceased. It is our conclusion that under the facts and circumstances as shown the award was proper.

The record before the Industrial Accident Commission discloses that for more than 20 years deceased had worked intermittently as a miner. During this period, when not so engaged, he worked as a farm laborer and during the war years worked in shipyards in the San Francisco Bay area. On March 31, 1947, because of illness, he quit his employment with the Winston Copper Company where he had been for approximately 10½ months, and on May 11, 1947, died as the result of "Pulmonary tuberculosis; silicosis." The widow testified they were married in Arizona in October, 1929, and a few months thereafter moved to California because the mines where decedent was then working were "Too bad—too hot" and "Too dirty." Although he had worked in many mines in California she testified concerning only the Pine Tree Mine in Mariposa County, where he worked for approximately six of the intervening years; her testimony regarding this mine being that at the end of the day when he returned home he would be "dusty and dirty." While he was employed at the Winston Mine she lived in Oakland and apparently had no knowledge of the conditions at that mine. The only evidence relative to the conditions there was given by a daughter of decedent who testified she had visited him there on several occasions and in response to the question, ". . . on those occasions what was his general appearance with reference to dirt and dust?" and replied "Very dirty." Petitioner's safety engineer who was called by it as a witness testified that he had worked in some of the same mines in Arizona as had decedent, that they were dusty, that dust counts

taken by the United States Bureau of Mines were high and that the dust contained a certain amount of silica. A letter addressed to petitioner's claims adjuster from a physician who had examined decedent at its request, referred to his general history and concluded with the statement that at the time of the examination on April 24, 1947, he was then suffering from "silicosis with superimposed tuberculosis," the exact source of which was not disclosed by his occupational history but in the doctor's opinion was "definitely not of recent origin."

On such evidence the commission found that the deceased while employed at the Winston Mine "was exposed to dust in deleterious amount and contracted the ·disease of silico-tuberculosis," which having arisen out of and in the course of his employment "constitutes an injury within the meaning of the Workmen's Compensation Law," and accordingly made an award to the widow and children of the deceased. A petition by the insurance carrier for a rehearing was denied by the commission and the present petition for a review was thereafter filed in this court.

It is true as petitioner contends that under Labor Code, section 3600, liability does not attach merely by virtue of employment but only if the requirements set forth in said section have been met, and that under section 5705 of the same code the burden rests upon the claimant to establish a prima facie case. However, that section must be construed in the light of the mandatory provisions of section 3202 thereof requiring that divisions IV and V of the code relating to workmen's compensation and workmen's safety, respectively, shall "be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

The Supreme Court of this state in a recent case, likewise involving silicosis, has enunciated the rule to be that where an employee is suffering from such disease all that needs to be proved is that he was exposed to dust while employed by the defendant employer. (*Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal. 2d 79 [172 P.2d 884].) The court, after observing that the essence of the rule is that it is sufficient if the employment contributes to the ultimate disability, stated at page 83:

"True the disease must arise out of the employment—must be employment connected, but a particular employment is not required to be the sole proximate cause of the disease. As long

as it substantially and proximately contributed to it, the employer may be held liable for the full disability.''

Pursuant to the provisions of the code and the rule so stated and in support of the award, respondent commission argues that although the record discloses decedent was exposed to dust at mines other than the Winston nevertheless the record also shows that decedent was exposed to dust while employed by petitioner's assured, and therefore the award was proper against petitioner, and full responsibility for compensation must be met by it.

This gives rise to the argument of petitioner that merely because the symptoms of the disease manifested themselves during the decedent's last employment it is not sufficient to warrant an award against such employer in the absence of a prima facie case which it contended the claimants failed to establish.

Thus the problem is reduced to the one remaining question: the sufficiency of the evidence to sustain the finding of the commission as to the element of exposure to dust.

As previously stated, the only direct evidence concerning dust conditions at the Winston Mine was that given by the daughter. No evidence was offered by petitioner to rebut her testimony. Likewise no evidence was offered to rebut testimony of the widow or the further testimony of the daughter that decedent was a normal, healthy person until stricken while working at that mine.

Therefore from the evidence before it, respondent commission first, could reasonably conclude that as the decedent had at some time inhaled a sufficient amount of silica dust as to ultimately cause his death, such inhalation could only have occurred during the three periods previously mentioned: his early employment in Arizona, his employment at the Pine Tree Mine or his last employment at the Winston Mine. Secondly, however, as there is nothing in the record to rebut the evidence that decedent was a normal healthy person prior to his last employment, that the disease did not manifest itself in any way prior to November or December, 1946, and that when he emerged from the mine he was, as his daughter testified, dirty, it could under such circumstances reasonably infer and find that the disease was either contracted at his last employment or that such employment "substantially and proximately contributed to it." (*Colonial Ins. Co. v. Industrial Acc. Com., supra.*) Such an inference is not only supported by the evidence but by the nature of the disease, for, as

this court stated in *Argonaut Mining Co.* y. *Industrial Acc. Com.*, 21 Cal.App. 2d 492 [70 P.2d 216], the rapidity of its fatal development appears to depend both upon the physical condition of the employee and the conditions of his employment which obviously may vary widely, some persons appearing to be immune but a greater majority appearing to be more readily susceptible. (See also *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933].)

Petitioner, however, challenges the sufficiency of the evidence given by the daughter to sustain such a finding; its contention being that the commission interpolated the word "dirty" as used by the daughter to mean "dusty," and it is argued that as one may be "dirty" but not "dusty" therefore such testimony in no way supports the finding that decedent was exposed to dust while working at the Winston Mine.

In this regard it is of interest to note that the inference drawn by the commission from the use of such words in the testimony of the daughter, which inference petitioner challenges, is the identical inference drawn by petitioner from the use of like words in the testimony of the widow, i. e., in its petition it is stated that the reason given by the widow for decedent leaving Arizona "was that the underground working conditions were bad and the mines were hot and *dusty.*" (Italics ours.) The actual testimony of the widow in this regard is as follows:

"Q. Did he ever say anything about the mines? A. About the mines over there?

"Q. Yes. A. Too bad—too hot.

"Q. Too·dirty? A. Too dirty. He never liked Arizona is why. He live over here all his life almost."

The question which immediately presents itself is: If the inference drawn by petitioner is reasonable, can it be said that a like inference drawn by the commission is unreasonable.

As stated in Webster's Dictionary, the adjective "dirty" is properly used to describe that which is base or sordid, or that which is obscene or indecent, or weather that is foggy, gusty or stormy. It is also stated in that work, the noun "dirt" is proper when used to name any filthy substance such as mud or dust adhering to a thing, thereby rendering it unclean, or in reference to earth or in reference to a state of mind or in relation to mining. Hence it would seem that by reason of the broad and varied meanings, the *particular subject* to which such adjective or such noun may refer, necessarily must be

considered with, and as a part of, the answer to a question relating thereto. Particularly apropos, therefore, is the admonition of the court in *Estate of Bristol,* 23 Cal.2d 221, 224 [143 P.2d 689], to be "realistic and practical" in exploring the reasonable inferences which may arise from the evidence.

■ It necessarily follows that where, as here, it appears that "the findings of the Industrial Accident Commission are supported by inferences which may fairly be drawn from evidence even though the evidence is susceptible of opposing inferences" (*Riskin* v. *Industrial Acc. Com.,* 23 Cal.2d 248, 254 [144 P.2d 16]), and which obviously is the case herein, a reviewing court will not substitute its views for those of the commission, or disturb the resulting award.

■ For the purpose of compensation, the disability of decedent culminated in his incapacity for work during his employment at the Winston Mine, and even if the commission had found that such employment was not the sole cause of death, as long as it substantially and proximately contributed to it, the petitioner could properly "be held for the full disability." (*Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79, 83 [172 P.2d 884].)

The award is affirmed.

Thompson, J., concurred.

ADAMS, P. J.—I dissent. The commission found that deceased, while employed at the Winston mine, was "exposed to dust in deleterious amount and contracted the disease of silico-tuberculosis." The evidence relied upon to support the conclusion that deceased while so employed was exposed to dust is the testimony of decedent's daughter that on two or three occasions when she visited her father at the mine, he was "dirty" when he emerged. She did not say that he was dusty, and she may as well have meant that he was muddy; and her testimony is farther still from showing that decedent was exposed to dust in "deleterious amounts" in said mine. In addition, the uncontradicted medical testimony is that decedent's diseased condition was "definitely not of recent origin." In my opinion the findings of the commission are without support in the evidence and the award should be set aside.

Petitioner's application for a rehearing was denied October 1, 1948. Adams, P. J., voted for a rehearing.